IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

APR - 1 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

| | | |
|---|---|---|
| FREDDIE JOHNSON,<br>**PLAINTIFF** | } | **JURY TRIAL DEMANDED** |
| | } | |
| v. | } | |
| | } | |
| EQUIFAX INFORMATION SERVICES, LLC,<br>AND WELLS FARGO BANK, N.A.,<br>**DEFENDANTS** | }<br>}<br>} | **CASE NUMBER:**<br><br>**2:26-CV-0091** |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

### I.    INTRODUCTION

1.    This is an action for damages brought by individual consumer Freddie Johnson, against Defendants Equifax Information Services, LLC ("Equifax") and Wells Fargo Bank, N.A. ("Wells Fargo") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

### II.    JURISDICTION AND VENUE

2.    Jurisdiction of this court arises under 15 U.S.C. § 1681(p) and 28 U.S.C. § 1331. The venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district, Defendant conducts business in this district, and communications giving rise to this action occurred in this district.

### III.    PARTIES

3.    Plaintiff is a natural person residing in Lawrenceville, Georgia.

4.    Plaintiff is a "consumer" as defined under 15 U.S.C. § 1681a(c) of the FCRA.

5.    Wells Fargo is a "furnisher of information" as defined under 15 U.S.C. § 1681s-2 of the FCRA.

6.    Equifax is a "consumer reporting agency" that compiles and maintains files on consumers nationwide, as defined under 15 U.S.C. § 1681a(p) of the FCRA. Equifax is regularly engaged in the business of compiling and maintaining files on consumers for the purpose of furnishing consumer reports to third parties regarding a consumer's creditworthiness, credit standing, or credit capacity.

## IV.    FACTUAL ALLEGATIONS

### *Plaintiff February 2026 Consumer Disclosure*

7.    On or around February 6th, 2026, Plaintiff requested a copy of his consumer credit disclosure from Equifax.

8.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request, Equifax was required to "clearly and accurately" ***disclose all information*** in Plaintiffs' file at the time of his request, with the limited exception that her Social Security number could be truncated upon request.

9.    Equifax provided an electronic copy of Plaintiffs' Consumer Disclosure ("Equifax's Disclosure") to him at his home address in Lawrenceville, Georgia.

### Equifax's Disclosure Was Not Complete, Clear, or Accurate

### Missing Original Creditors

10.    Despite a requirement to disclose all information in his credit file at the time of his request, Equifax's Disclosure omitted significant amounts of information contained in his credit file.

11.     Equifax's Disclosure indicated that Plaintiffs' credit file contained multiple accounts classified as "Credit." **See Exhibit A.**

12.     Equifax's Disclosure stated: "This includes all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit."

13.     The accounts appearing in the "Credit" section was reported by LVNV Funding LLC ("LVNV") and Midland Credit Management ("MCM").

14.     LVNV and MCM are Debt Buyers – a company whose primary purposes are the purchase and collection of debts which were originally owed to third parties.

15.     As LVNV and MCM do not lend to consumers, it is *never* an *Original Creditor.*

16.     Despite this, when disclosing the LVNV and MCM tradeline to Plaintiff, Equifax indicated that LVNV and MCM was the *Original Creditor* of the account, omitting any reference to the *Original Creditor.*

### *Missing Account Numbers*

17.     Making matters even more confusing for Plaintiff, Equifax omitted the full account numbers relating to the LVNV and MCM tradeline.

18.     Upon information and belief, these data furnishers reported the full account number belonging to their respective accounts to Equifax, and this information was contained within Equifax's file regarding Plaintiff at the time of his request.

19.     When Equifax produces and sells reports regarding Plaintiffs to third parties, the full account numbers and names of the original creditors are included in its reports.

20.     The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

21.    Having a duty to disclose *all of the information* regarding the accounts in Plaintiffs' file, Equifax breached its duty by failing to provide the account number and original creditors' names, as such information is necessary for a consumer to be able to research and evaluate the information contained in his credit file.

22.    Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

23.    Equifax's disclosure contains a section entitled "Collections," stating: "If you fall behind on payments, the lender or creditor may transfer your account to a collection agency or sell it to a *debt buyer*. This generally occurs a few months after you become delinquent, or the date you begin missing payments or not paying the full minimum payment. A collection account may be reported to one, two, or all three of the nationwide credit reporting agencies (Equifax, Experian and TransUnion) and reflected on your credit reports. It can also have a negative impact on credit scores, depending on the credit scoring model (different ways credit scores are calculated). Like other negative information, a collection account can remain on your credit reports for up to seven years from the date you first miss a payment to the original lender or creditor."

24.    Thus, Equifax should have placed the LVNV and MCM tradeline under the "Collections" header of Plaintiffs' Disclosure rather than the "Credit" header.

25.    Equifax disclosed a significant number of accounts reported by other data furnishers without full account numbers.

26.    Equifax disclosed five (5) tradelines without full account numbers.

27.    Upon information and belief, all the aforementioned data furnishers reported full account numbers to Equifax, and this information was contained within Equifax's file on Plaintiffs at the time of his request for his consumer disclosure.

28. Due to widespread systemic problems, Equifax's automated systems omits all but the last two or four account numbers reported by data furnishers that have a reported current payment status of "charge off," in addition to many other types of accounts.

29. Equifax knows of this error but despite such knowledge, has yet to correct it.

30. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax,* Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.").

31. The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

32. The lack of accurate, full account numbers caused Plaintiffs great frustration and emotional distress when trying to understand his credit report and verify it against his own records.

33. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security)

numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." **See Exhibit B.**

34.    Equifax's omission of the original creditor and full account numbers greatly decreases a consumer's ability to understand his consumer credit disclosure, identify the accounts, and compare those accounts with his own records.

35.    The Credit Reporting Resource Guide, published by the Consumer Data Industry Association ("CDIA"), a trade association representing the CRAs, including Equifax, states that:

> **"The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent." (Emphasis original.) **See Exhibit C**.

36.    The Credit Reporting Resource Guide instructs debt collectors to "(r)eport the name of the company/creditor that originally opened the account for the consumer." Id.

37.    Upon information and belief, LVNV and MCM complied with the *Credit Reporting Resource Guide* and reported the names of the true original creditors of its reported accounts.

### *Prevalence of Equifax's Account Number Errors*

38.    Upon information and belief, Equifax's Disclosure to Plaintiff was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

39.    Upon information and belief, this same template is used virtually every time a consumer requests their file from Equifax through www.annualcreditreport.com.

40.    Upon information and belief, www.annualcreditreport.com is where most consumers obtain their Equifax credit disclosure.

41. Consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing account number and missing original creditor name errors.

42. Thus, every consumer with accounts appearing in the "Credit" section of their disclosure who requested their disclosure from Equifax through www.annualcreditreport.com since the template's use began received a consumer disclosure with the same errors as Plaintiff.

43. Equifax's error has therefore likely affected thousands of consumers.

44. Equifax has known of the flaws in its systems for years, but has done nothing to fix them, despite the large number of consumers affected. *See, e.g., Justin Purdy vs. Equifax Information Services LLC*, case 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

45. Equifax's knowing and repeated conduct warrants an award of punitive damages.

46. Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the Defendant's desire to avoid costs and increase profits.

47. Plaintiff has a right to a full and complete disclosure of the contents of his file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

48. Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Plaintiff deprived him of that right.

### *Santander Account*

49. On or around February 6th, 2026, Plaintiff received a copy of his consumer credit disclosure from Equifax.

50. The consumer credit disclosure contained false and inaccurate information regarding the Santander Consumer USA account ending in 1000.

51.    Santander sold the account to Jefferson Capital Systems.

52.    Upon information and belief, Santander notified Equifax that the account had been sold to Jefferson Capital Systems and to update the balance to $0.

53.    However, Equifax ignored Santander and continued to report false and inaccurate information regarding the account.

54.    Equifax inaccurately reported the Santander account with a $9,302 balance. **See Exhibit D.**

55.    Because Santander no longer owned the alleged debt, Equifax's reporting of a $9,302 balance was patently inaccurate. The account should have reflected a zero balance.

56.    Equifax employed internal processes that were not reasonable and failed to ensure the maximum possible accuracy of the information reported in Plaintiff's credit file.

57.    The sole reason the inaccurate information was included in Plaintiff's credit report was that Equifax failed to follow reasonable procedures to ensure the maximum possible accuracy of the information when it prepared Plaintiff's credit report and credit file.

58.    On or around February 20th, 2026, Plaintiff was denied a credit card from PenFed Credit Union, which obtained information from Equifax, and used that information in making their credit decision.

59.    As a result of the conduct, action, and inaction of Equifax, Plaintiff has suffered actual damages, including but not limited to decreased FICO score, inability to obtain a credit card, inability to purchase and benefit from credit, damage to reputation, emotional distress, mental anguish, frustration, anger, embarrassment, and humiliation.

*Universal Payment Corp Account*

60. On or around February 16th, 2026, Plaintiff disputed the completeness and accuracy of the Universal Payment Corp account ending in 199Y.

61. However, Equifax verified the account as accurate.

62. Despite Plaintiff's dispute, Equifax continued to report false, inaccurate, incomplete, or unverifiable information regarding the account.

63. Equifax inaccurately reported Plaintiff as "60 days late" for Aug 2022. **See Exhibit E.**

64. Considering the account as Current in July 2022, and there are only 30 days in a month, the 60-day late notation in Aug 2022 was patently inaccurate.

65. Equifax inaccurately reported the "Date of Last Payment" as May 2022; however, the payment history reflects a payment made in July 2022, rendering the Date of Last Payment patently inaccurate. **See Exhibit E.**

66. Adding further injury to insult, the "Date of First Delinquency" reported by Equifax is false in accordance with the payment history, rendering the Date of First Delinquency patently inaccurate. **See Exhibit E.**

67. Equifax failed to conduct a reasonable investigation, failed to correct and/or delete information they knew or should have known to be inaccurate, incomplete, or unverifiable, failed to contact Plaintiff or any third-parties, and failed to review underlying account information with respect to the disputed information and the accuracy of the disputed information.

68. Equifax employed an investigation process that was not reasonable and did not remove the inaccurate information identified in Plaintiff's dispute.

69. Equifax employed internal processes that were not reasonable and failed to ensure the maximum possible accuracy of the information reported in Plaintiff's credit file.

70.     The sole reason the inaccurate information was included in Plaintiff's credit report, was that Equifax failed to follow reasonable procedures to ensure the maximum possible accuracy of the information when it prepared Plaintiff's credit report and credit file.

71.     Without any explanation or reason, Equifax continue to report this false, inaccurate, incomplete, or unverifiable information about Plaintiff.

72.     On or around February 20th, 2026, Plaintiff was denied a credit card from PenFed Credit Union, which obtained information from Equifax, and used that information in making their credit decision.

73.     As a result of the conduct, action, and inaction of Equifax, Plaintiff has suffered actual damages, including but not limited to decreased FICO score, inability to obtain a credit card, inability to purchase and benefit from credit, damage to reputation, emotional distress, mental anguish, frustration, anger, embarrassment, and humiliation.

### *Navy Federal Accounts*

74.     On or around February 16th, 2026, Plaintiff disputed the completeness and accuracy of the Navy Federal account ending in 2257.

75.     However, Equifax verified the account as accurate.

76.     Despite Plaintiff's dispute, Equifax continued to report false, inaccurate, incomplete, or unverifiable information regarding the accounts.

77.     Equifax inaccurately reported Plaintiff as "60 days late" for Oct 2022. **See Exhibit F.**

78.     Considering the account as Current in Sep 2022, and there are only 30 days in a month, the 60-day late notation in Oct 2022 was patently inaccurate.

79.    In addition, Equifax reported a duplicate Navy Federal account ending in 2257. **See Exhibit G.**

80.    The duplicate account reflected the same account number, date opened, credit limit, and other items of information. **See Exhibit G.**

81.    Reporting the same account twice is patently inaccurate as it does not represent two *separate* credit accounts or obligations. Instead, it reflects the same underlying account being listed more than once, which falsely suggests that Plaintiff has additional credit accounts or obligations that do not actually exist, resulting in a negative impact on Plaintiff's creditworthiness.

82.    Equifax failed to conduct a reasonable investigation, failed to correct and/or delete information they knew or should have known to be inaccurate, incomplete, or unverifiable, failed to contact Plaintiff or any third-parties, and failed to review underlying account information with respect to the disputed information and the accuracy of the disputed information.

83.    Equifax employed an investigation process that was not reasonable and did not remove the inaccurate information identified in Plaintiff's dispute.

84.    Equifax employed internal processes that were not reasonable and failed to ensure the maximum possible accuracy of the information reported in Plaintiff's credit file.

85.    The sole reason the inaccurate information was included in Plaintiff's credit report, was that Equifax failed to follow reasonable procedures to ensure the maximum possible accuracy of the information when it prepared Plaintiff's credit report and credit file.

86.    Without any explanation or reason, Equifax continues to report this false, inaccurate, incomplete, or unverifiable information about Plaintiff.

87.    On or around February 20th, 2026, Plaintiff was denied a credit card from PenFed Credit Union, which obtained information from Equifax, and used that information in making their credit decision.

88.    As a result of the conduct, action, and inaction of Equifax, Plaintiff has suffered actual damages, including but not limited to decreased FICO score, inability to obtain a credit card, inability to purchase and benefit from credit, damage to reputation, emotional distress, mental anguish, frustration, anger, embarrassment, and humiliation.

### *Wells Fargo Account*

89.    On or around February 16th, 2026, Plaintiff disputed the completeness and accuracy of the Wells Fargo account ending in 3171.

90.    Upon information and belief, Equifax notified Wells Fargo of the dispute.

91.    However, Wells Fargo verified the account as accurate.

92.    Despite Plaintiff's dispute, Wells Fargo continued to report false, inaccurate, incomplete, or unverifiable information regarding the account.

93.    Wells Fargo inaccurately reported Plaintiff as "60 days late" for Jan 2024. **See Exhibit H.**

94.    Considering the account as Current in Dec 2023, and there are only 30 days in a month, the 60-day late notation in Jan 2024 was patently inaccurate.

95.    Adding further injury to insult, the "Date of First Delinquency" reported by Wells Fargo is false in accordance with the payment history, rendering the Date of First Delinquency patently inaccurate. **See Exhibit H.**

96.    Wells Fargo failed to conduct a reasonable investigation, failed to correct and/or delete information they knew to be inaccurate, incomplete, or unverifiable, failed to contact

Plaintiff or any third-parties, and failed to review underlying account information with respect to the disputed information and the accuracy of the disputed information.

97.     Instead of conducting a reasonable investigation, Wells Fargo erroneously validated the account and reported and continues to report inaccurate information about Plaintiff to Equifax.

98.     Equifax failed to conduct a reasonable investigation, failed to correct and/or delete information they knew or should have known to be inaccurate, incomplete, or unverifiable, failed to contact Plaintiff or any third-parties, and failed to review underlying account information with respect to the disputed information and the accuracy of the disputed information.

99.     Equifax employed an investigation process that was not reasonable and did not remove the inaccurate information identified in Plaintiff's dispute.

100.    Equifax employed internal processes that were not reasonable and failed to ensure the maximum possible accuracy of the information reported in Plaintiff's credit file.

101.    The sole reason the inaccurate information was included in Plaintiff's credit report was that Equifax failed to follow reasonable procedures to ensure the maximum possible accuracy of the information when it prepared Plaintiff's credit report and credit file.

102.    Without any explanation or reason, Wells Fargo and Equifax continue to report this false, inaccurate, incomplete, or unverifiable information about Plaintiff.

103.    On or around February 20th, 2026, Plaintiff was denied a credit card from PenFed Credit Union, which obtained information from Equifax, and used that information in making their credit decision.

104.    As a result of the conduct, action, and inaction of Wells Fargo and Equifax, Plaintiff has suffered actual damages, including but not limited to decreased FICO score, inability to obtain

a credit card, inability to purchase and benefit from credit, damage to reputation, emotional distress, mental anguish, frustration, anger, embarrassment, and humiliation.

## V.   COUNT 1
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681g(a)(1)
## AGAINST DEFENDANT EQUIFAX INFORMATION SERVICES, LLC

105.   Plaintiff incorporates by reference paragraphs 1-48 of this Complaint.

106.   Equifax violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for his consumer disclosure by failing to clearly and accurately disclose to Plaintiff, a Consumer, all of the information in his file at the time of the request. Specifically, Equifax disclosed an account reported by LVNV Funding LLC and Midland Credit Management without disclosing the full account number or the name of the Original Creditor, and five (5) accounts also without the full account numbers, even though full account numbers were reported by the data furnishers.

107.   Equifax knowingly provided inaccurate and incomplete information in Plaintiff's disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

108.   As a result of the conduct, action, and inaction, of Equifax, Plaintiff has suffered actual damages, including but not limited to frustration and emotional distress when trying to understand his credit report and verify it against his own records.

109.   The conduct, action, and inaction of Equifax was willful, rendering Equifax liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

110.   In the alternative, Equifax was negligent, and Plaintiff is entitled to recover damages under 15 U.S.C. § 1681o.

111.   Plaintiff is entitled to recover costs from Equifax pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## VI.    COUNT 2
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### AGAINST DEFENDANT EQUIFAX INFORMATION SERVICES, LLC

112.    Plaintiff incorporates by reference paragraphs 1-6 and 49-104 of this Complaint.

113.    After receiving the dispute, Equifax failed to correct the false information reporting on Plaintiff's credit report and/or credit file.

114.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to ensure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

115.    As a result of the conduct, action, and inaction of Equifax, Plaintiff has suffered actual damages, including but not limited to decreased FICO score, inability to obtain a credit card, inability to purchase and benefit from credit, damage to reputation, emotional distress, mental anguish, frustration, anger, embarrassment, and humiliation.

116.    The conduct, action, and inaction of Equifax were willful, rendering Equifax liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

117.    In the alternative, Equifax was negligent, and Plaintiff is entitled to recover damages under 15 U.S.C. § 1681o.

118.    Plaintiff is entitled to recover costs from Equifax pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## VII.    COUNT 3
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### AGAINST DEFENDANT EQUIFAX INFORMATION SERVICES, LLC

119.    Plaintiff incorporates by reference paragraphs 1-9 & 60-104 of this Complaint.

120. After receiving the dispute, Equifax failed to correct the false information reported on Plaintiff's credit report and/or credit file.

121. Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation, failing to provide notification of the dispute to any person who provided any item of information in dispute, and failing to delete information that was inaccurate, incomplete, or cannot be verified.

122. Without any explanation or reason, Equifax continues to report this unverifiable, inaccurate, and otherwise incomplete information about Plaintiff.

123. As a result of the conduct, action, and inaction of Equifax, Plaintiff has suffered actual damages, including but not limited to decreased FICO score, inability to obtain a credit card, inability to purchase and benefit from credit, damage to reputation, emotional distress, mental anguish, frustration, anger, embarrassment, and humiliation.

124. The conduct, action, and inaction of Equifax were willful rendering Equifax liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

125. In the alternative, Equifax was negligent, and Plaintiff is entitled to recover damages under 15 U.S.C. § 1681o.

126. Plaintiff is entitled to recover costs from Equifax pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## VIII.   COUNT 4
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)
## AGAINST DEFENDANT WELLS FARGO BANK, N.A.

127. Plaintiff incorporates by reference paragraphs 1-9 and 89-104 of this Complaint.

128. After receiving the dispute, Wells Fargo failed to correct the false information reported on Plaintiff's credit report and/or credit file.

129.    Wells Fargo violated 15 U.S.C. § 1681s-2(b) by failing to fulfill its obligations as a furnisher upon receiving notice of a dispute.

130.    Wells Fargo violated multiple sections of 15 U.S.C. § 1681s-2(b), including but not limited to: [a] failing to conduct a reinvestigation with respect to the disputed information; [b] failing to report the results of the investigation to the consumer reporting agency; [c] failing to report accurate information to the consumer reporting agencies after a dispute including Equifax and other consumer reporting agencies known and unknown; and [d] failing to delete the incomplete and/or inaccurate information.

131.    As a result of the conduct, action, and inaction of Wells Fargo, Plaintiff has suffered actual damages, including but not limited to decreased FICO score, inability to obtain a credit card, inability to purchase and benefit from credit, damage to reputation, emotional distress, mental anguish, frustration, anger, embarrassment, and humiliation.

132.    Wells Fargo's conduct, action, and inaction were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

133.    In the alternative, Wells Fargo was negligent, Plaintiff is entitled to recover damages under 15 U.S.C. § 1681o.

134.    Plaintiff is entitled to recover costs from Wells Fargo pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## IX.    JURY DEMAND AND PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests a jury trial and requests that judgment be entered in favor of Plaintiff and against Defendants for:

    A.  The greater of statutory damages of $1,000 per incident and Plaintiff's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or Plaintiff's actual damages

pursuant to 15 U.S.C. § 1681o(a)(1);

B.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

C.  Costs of the action pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15

U.S.C. § 1681o(a)(2); and,

D.  Any other equitable relief the court may deem just and appropriate.

Respectfully Submitted,

Dated:  April 1st, 2026

By: ___/s/ Freddie Johnson_____

Freddie Johnson - Pro Se Plaintiff
2210 Golden Valley Dr
Lawrenceville, GA 30043
(404) 645-4568
freddieljohnsoniii@gmail.com